THE STATE, WATSON ᛏET AL., PROSECUTORS, v. THE MEDICAL SOCIETY OF NEW JERSEY.

STATE, VARICK ET AL., PROSECUTORS, v. THE SAME.

1. A writ of *certiorari* will not lie to revise or correct erroneous opinions, however hurtful they may be to individuals against whom they are expressed. An order, judgment or determination affecting the rights of the prosecutors is necessary as a foundation for the use of the writ.

2. The jurisdiction of a representative body composed of members selected by, and delegated to it by other bodies, to judge of the qualification and election of its members, is a power necessarily incident to bodies of such composition. In most instances, the investigation must be summary in its proceedings, and in the absence of statutory provisions or regulations by by-laws, is discretionary in the mode of procedure.

3. The Medical Society of New Jersey, incorporated by act of the legislature, is composed of delegates chosen by and from each of the district or county societies instituted by its authority. In the county of H., two separate organizations are maintained, each claiming to be the District Medical Society of the county of H. Two sets of delegates, chosen by their organizations, appearing and claiming admission as members of the state society—*Held*, that it was competent for the state society, in determining the election of its members, to ascertain and decide which of the organizations was the district society, and that the facts might be ascertained through the medium of a committee.

On *certiorari*.

Argued at February Term, 1876, before Justices DEPUE, KNAPP and DIXON.

For the plaintiffs, *A. I. Smith* and *McGill*.

Contra, *John Lilly* and *B. Gummere*.

The opinion of the court was delivered by

DEPUE, J. These cases originated in a dispute among the members of the District Medical Society of the county of Hudson, with respect to its proceedings at a meeting of March 4th, 1873.

The society met in the court-house, and, after organizing, a motion was made that the society do adjourn to the district attorney's office. Of the persons present and claiming a right to vote, the greater number cast their votes in the negative. The right of some of the persons voting in the negative to be considered as members being in dispute, the president declared the motion carried, and in company with the affirmative voters withdrew to the district attorney's office, and proceeded to hold a meeting there. The persons voting in the negative remained in the room where the society first met, and appointed a chairman *pro tempore*, and transacted other business. And at an adjourned meeting held on the 11th of March, proceeded to expel the president and such of the members as adhered to him in the adjournment.

In this way two bodies came into existence, each claiming to be the District Medical Society of the county of Hudson, and each keeping up an organization as such.

At the annual meeting of the Medical Society of New Jersey, held in May, 1873, a memorial from the District Medical Society of the county of Hudson, signed by Dr. Cornelison and others as a committee, was presented and referred to the committee on ethics and judicial business. This memorial emanated from the body which continued its session as the county society at the place of the first meeting, in disre-

gard of the adjournment declared by the president. It con-
tained a recital of the facts as understood by the members of
that body, and in the name of the society asked "the assist-
ance of the State Medical Society in the expression of its
opinion or the recognition of this district society, and refusal
to recognize the seceders." The memorial also requested such
order or expression of opinion in regard to the restoration of
the minute book as might be deemed expedient, and the issu-
ing of a duplicate charter to the society in the place of the
original, which was in the possession of the other party.

No action was taken on this memorial by the state society
at its session of 1873, beyond a reference to the committee.
But at the annual meeting of the state society in May, 1874,
two sets of delegates appeared, each with formal credentials,
and claiming to represent the district society. The admission
of any representation from the society was deferred until the
committee should report. The committee reported, submit-
ting four propositions as their decision upon the memorial,
the last of which was that the memorialists and their associ-
ates constituted the District Medical Society for Hudson
county, and were entitled to representation in the state
society by their delegates. They further reported that the
memorialists were entitled to the book of records, and were
the rightful custodians of the archives of the society. The
only entries on the record of the proceedings of the society in
relation to the matters contained in the report, are as follows :
"The standing committee, as the committee on ethics and
judicial business, by the chairman, reported in full upon the
subjects referred to it at the last meeting. The report and
its conclusions were accepted by the society as final." . . .
The committee on organization reported the following as the
accredited delegates from Hudson county : (naming those
chosen by the memorialists and their associates.) These dele-
gates were thereupon admitted and placed on the roll as
representatives from the district society.

These writs of *certiorari* were sued out by the unsuccessful
contestants to review the action and proceedings of the state

society, on the ground of want of jurisdiction, and alleged irregularities in conducting the proceedings in disregard of its own by-laws.

The first three propositions contained in the committee's report, that the district society did not adjourn on the 4th of March, 1873; that the refusal of the president to entertain an appeal from his decision could not be justified, and that his withdrawal from the society with the other seceding members, and the abstraction of the minute book, were acts of disorganization, are a mere expression of opinion, or finding of facts as reasons for the conclusion the committee reached, that the body represented by the memorialists constituted the society, and were entitled to representation.    If the state society, by its vote, in adopting the conclusions of the report, concurred in the finding of the committee of the facts reported, such concurrence operated merely as a formal expression of the opinions of its members, or reasons for the official action of the society in determining who were entitled to sit as delegates.    The society took no official action beyond the determination of the admission of members to its body.    Nothing else in effect was submitted by the memorialists, but the recognition of that body in its relations with the state society.    The legality of the expulsion of members by the district society, and the propriety of the censure of members for the conduct complained of, were not brought before the state society for adjudication.    No appeal from the subordinate society to its superior, was pending.    The circumstances connected with the disruption of the district society are set out in the memorial as part of the history of the proceedings out of which the two rival bodies originated. They were pertinent for that purpose, and might be taken into consideration by the state society, in deciding which of the two rival bodies was the district society, having regard only to the regularity of its proceeding under its organic law. Naturally, if not necessarily, the conduct of individuals became incorporated into the narrative as part of the history of the transaction, and was part of the case as laid before the

state society, and was considered by it in determining the regularity of the two bodies, and the right of representation in the state society.

Whether the members of the society, in deliberating on the question of the admission of members, formed correct or just opinions on the facts, cannot be considered on *certiorari*. A writ of *certiorari* will not lie to revise or correct erroneous opinions, however hurtful they may be to individuals, concerning whom they are expressed. An order, judgment, or determination affecting the rights of the prosecutors, is necessary as a foundation for the use of the writ. In the present case the only determination of the defendants was with respect to the admission of members. The acts and resolutions of the society, when stripped of mere surplusage, extend no further than that. A construction giving them greater effect would be entirely nugatory in its operation. Even the declaration by the committee as to the custody of books and papers, if it be assumed to have been approved by the society, is not a judicial determination of the right of property. Remedy may be had for their possession in a court of law without embarrassment by the action of the defendants.

Consequently the reasons assigned, which are based on the assumption that the action of the defendants was an adjudication of the individual rights or status of the prosecutors, or was in the exercise of an appellate jurisdiction over district societies, and arraigning the proceedings as in violation of the forms to be observed in such matters, must be disregarded.

The only reasons that present a question for decision by the court are such as touch the right of the defendants to institute inquiry as to which of the two contending parties constituted the district society.

The Medical Society of New Jersey maintains its existence under the act of 1864. (*Acts*, 1864, *p.* 250.) It is composed of delegates chosen by and from each of the district or county societies, which are instituted by the authority of the state society, together with the officers for the time being, and such of the profession as have been presidents of the society.

With the exception of membership arising from present or past official position, the state society is purely a representative body. Under its by-laws a meeting is held annually, on the fourth Tuesday of May. The society, in the year 1874, met on the 26th of May, and continued in session for two days. The delegates are elected by the district society annually, and are admitted on a certificate of delegation, signed by the president or secretary of the district society of which they are respectively members.

The jurisdiction of a representative body composed of members selected by, and delegated to it from other bodies, to judge of the qualification and election of its members, is a power necessarily incident to bodies of this composition. As membership is only important as it admits to a participation in the business of a body, a prompt and speedy determination of questions of membership is highly important.

The investigation must, in most instances, be summary in its proceedings, and, in the absence of statutory provisions, or regulations by by-laws, is discretionary in the mode of procedure. Whether the decision, *pro hac vice*, should not be treated as final, till annulled by *mandamus*, to admit the rejected contestants, or by *quo warranto*, to oust the usurpers, it is not necessary to decide. It is doubtful, at least, whether *certiorari*, which tears down, but does not build up—which, if successfully prosecuted, would vacate the resolution without ousting the sitting members or admitting the rejected claimants, is an appropriate remedy. But, be that as it may, this court would not be justified in reversing the decision of the defendants in a matter over which they had undoubted jurisdiction, unless on proof of illegality in their proceedings.

Each of the contesting parties presented credentials purporting to be signed by the proper officers, and apparently regular in form. The society could not determine the right of membership from an inspection of the credentials. It became necessary to ascertain which of the certifying officials legally represented the society. In this way the inquiry as to which of the two bodies constituted the district society was

forced upon the defendants. It was referred to a committee to make report, and it was competent for the society to ascertain the facts through the medium of a committee. 1 *Dillon on Mun. Corp.*, § 227. Such is the practice of all representative bodies in this country in cases of contested elections. As appears by the report, both parties had a hearing before the committee. In so far as relates to the admission of the successful delegates by the society, acting on the report of the committee, no error is made apparent.

The writ was not allowed until May, 1875, when, practically, the membership of the admitted delegates had ceased, and the case was not argued until after the term of membership in contest had expired.

If, under these circumstances, we thought that the proceedings of the defendants were illegal, a reversal would be entirely useless.

On the reasons which present the question for the judgment of this court, judgment of affirmance must be entered.