[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 225 
Appellants attack an asserted determination by the respondent (hereinafter referred to as "Commissioner"), and contend that it unlawfully terminated their club liquor licenses as of December 1, 1948, consequent upon the result of a referendum election participated in by the voters of the borough of Rutherford. The Commissioner contends that he merely gave an advisory opinion or interpretation of the legal effect of the referendum election with respect to the three club licenses theretofore issued to and held by the appellants.
The relevant facts are: On November 2, 1948, a referendum election was held in the Borough of Rutherford on the question: *Page 226 
"Shall the retail sale of all kinds of alcoholic beverages, for consumption on the licensed premises by the glass or other open receptacle pursuant to chapter 1 of the title Intoxicating Liquors of the Revised Statutes (Section 33:1-1, et seq.), be permitted in this municipality?"
The vote was negative. The Commissioner, on November 18, 1948, in response to a letter from the Borough Clerk of Rutherford Borough, informing him of the result of said referendum, sent a communication to the clerk, stating that by virtue of paragraph 3 of R.S. 33:1-45 and "Pursuant to the provision of the statutory section and the negative vote thereunder at the referendum, it will be unlawful for the Mayor and Council to issue any license which shall permit the retail sale of alcoholic beverages for consumption on the licensed premises by the glass or other open receptacle; and, from and after midnight of Wednesday, December 1, 1948, the three club licenses now outstanding in the Borough shall be completely void and inoperative. (See the enclosed copies of Re Rutherford, Bulletin 63, Item 1, and ReMerchantville, Bulletin 58, Item 3.)" Under date of November 18, 1948, the Commissioner forwarded a copy of this letter to each of the appellants, stating that it was for their "prompt and careful attention. * * *" Appellants state that thereafter they made an oral request of the Commissioner for a hearing, although the record does not reveal this fact. In the argument before this court, it was conceded that the Commissioner had held lengthy conferences with representatives of the appellants, that in response to the request of counsel for appellants for a hearing, the Commissioner stated that the statute did not provide the means for such a hearing on the question at issue, that there was no factual issue presented and the question of the proper construction of the pertinent section of the statute had been "completely argued before him".
Appellants contend that the letters written by the Commissioner constituted reviewable action or decision by him under Rule
3:81-8. The Commissioner contends that he did nothing more than to give utterance to his interpretation or construction of the provisions of the statute in question, that his opinion was merely of an advisory nature, there was no formal hearing or *Page 227 
proceeding before him, there is no authority for a hearing on the question at issue, and that he made no reviewable determination. As stated, appellants contend that the Commissioner's action had the effect of terminating their licenses; that their licenses would not have expired otherwise until June 30, 1949; that rights valuable to appellants are involved, and to disregard the asserted determination of the Commissioner would expose appellants to prosecution under the criminal laws of this State.
Rule 3:81-8, as amended, provides that a "Review of the final decision or action of any State Administrative Agency shall be by appeal to the Appellate Division. * * *" Formerly, such a review, if allowed, was by certiorari. The basis for the issuance of a writ of certiorari to review a decision of an administrative agency was clearly defined by Mr. Justice Heher in Morgan v.Burnett, 121 N.J.L. 352, 2 A.2d 339 (Sup.Ct. 1938), wherein he stated:
"It is the settled rule in this court that `certiorari will not lie to revise or correct erroneous opinions, however hurtful they may be to individuals concerning whom they are expressed. An order, judgment, or determination affecting the rights of prosecutors is necessary as a foundation for the use of the writ.' * * * `The writ of certiorari cannot be used to draw judicial opinions in advance or to affect adjudications of subordinate tribunals.' Newark v. Fordyce, 88 N.J.L. 440, 97 A. 67, 68; Livingston v. Rector, c., of Trinity Church,45 N.J.L. 230; Drake v. Plumo, 44 N.J.L. 362; Watson v.Medical Society of New Jersey, 38 N.J.L. 377."
Cf. Vesey v. Driscoll, 132 N.J.L. 293, 40 A.2d 291(Sup.Ct. 1944).
Our review of the letters of the Commissioner convinces us that he merely expressed his opinion or interpretation of the legal effect of the referendum election with respect to the club licenses held by the appellants, that these letters did not constitute a final decision or action by him and, therefore, are not reviewable. The decided cases of our courts so hold, supra. For many years the Commissioner has adopted the practice of furnishing his opinions and views to issuing authorities, licensees and others who have communicated with him and who have posed certain questions and problems with which they have been faced in connection with the administering of the Alcoholic Beverage Law and the applicability thereof with *Page 228 
respect to the conduct of their licensed business. Such advisory opinions have served a useful purpose in that they have clarified many perplexing and confusing problems encountered by the issuing authorities, licensees and others affected by the Alcoholic Beverage Law. These advisory opinions of the Commissioner have had a salutary effect and have been conducive to a satisfactory and successful administering of the Alcoholic Beverage Law by the Commissioner of Alcoholic Beverage Control, to whom that task is entrusted by the express provisions of the Act. R.S. 33:1-23.
We are of the opinion that the Commissioner had no authority to and did not make a determination on the question at issue here. And, if it were considered on the merits, it would inevitably lead to the same conclusion. Accordingly, we concur in the view he expressed, to wit: that said club licenses automatically expired on December 1, 1948, which date was the expiration of thirty days after the date of the vote at the referendum election.
We find no merit in appellants' contention that the referendum election did not void their licenses or that they were only partially voided. Appellants argue that the question on which the citizens voted applied only to plenary retail consumption licenses, as provided for in R.S. 33:1-45, that club licenses are not prohibited by a negative vote at a referendum either under R.S. 33:1-45 or under R.S. 33:1-46, and that, assumingR.S. 33:1-45 applied to club licenses, such licenses would then be only partially inoperative and appellants would not be precluded from selling intoxicating liquors in sealed containers for consumption on the club premises. This is a specious argument and falls of its own weight. Analogically, appellants argue that under the language of R.S. 33:1-46.1, adopted in 1945, in the event of a negative referendum resulting in total prohibition of the retail sale of alcoholic beverages for consumption on the premises, such negative vote, while voiding certain enumerated licenses, does not prohibit club licenses; in fact, appellants argue, club licenses are specifically excepted. While the preamble to this supplement is rather loosely and inartistically drawn, it is quite clear that club licenses *Page 229 
(except for bona fide golf and country clubs) are voided byR.S. 33:1-46.1, in the event of such a negative referendum vote, notwithstanding the fact that they are not specifically enumerated therein as one of the voided types of licenses. The supplement of 1945 was obviously adopted to provide for the issuance of club licenses to golf and country clubs notwithstanding a negative referendum vote. The fact that R.S.
33:1-46.1 makes such a provision for club licenses solely for golf and country clubs emphasizes the fallacy of appellants' argument. Under the Alcoholic Beverage Law the Legislature has provided for the issuance of two licenses permitting retail sale of alcoholic beverages, to wit: (1) by the glass or other open receptacle for consumption on the licensed premises and (2) in the original container for consumption off the licensed premises. A plenary retail consumption license (R.S. 33:1-12 (1)) entitles the licensee to both privileges. A plenary retail distribution license (R.S. 33:1-12 (3a)) only permits sales in the original container for consumption off the licensed premises. The only distinction between a club license and a plenary retail consumption license is that a club license is limited to sales "to bona fide club members and their guests", for immediate consumption on the licensed premises, (R.S.
33:1-12 (5)). It clearly appears to us that the Legislature, by the use of the words "by the glass or other open receptacle" did not intend to make any distinction between the prohibition of the sale of alcoholic beverages for consumption on the licensed premises, whether under a plenary retail consumption license or a club license, in the event of such a negative referendum vote. Nor are we persuaded by appellants' argument that the Legislature intended, in the event of a negative referendum vote, that club licenses would thereafter be void as to the sale of alcoholic beverages by the glass or other open receptacle for consumption on the premises, but continue to be effective for the sale of alcoholic beverages in sealed containers for consumption on the premises.
The Commissioner contends that the legislation under review here has been heretofore construed to include club licenses in those licenses that are voided under a negative vote under R.S. *Page 230 
33:1-45. Such construction, he argues, is found in Bulletin No. 58(3) published by the Commissioner in 1934 and in Bulletin No. 63(1) issued in January, 1935, to which reference is made in the Commissioner's letter of November 18, 1948. The opinions expressed by the Commissioner in these bulletins do not bring them within the confines of Cino v. Driscoll, 130 N.J.L. 535,34 A.2d 6 (Sup.Ct. 1943), cited by the Commissioner. However, it is significant that the Legislature has failed to "indicate its disapproval thereof" (Cino v. Driscoll, supra)
since the Commissioner published the bulletins in question.
Appellants argue that the referendum election could not void the licenses issued to them for which they had paid the annual license fee and which were otherwise effective until June 30, 1949. This argument has no substance. Such a license is subject, of course, to all of the risks which may legally attach thereto, including the possibility of an adverse referendum election such as occurred in the instant case and its resulting effect upon their licenses.
We are of the opinion that the effect of the referendum vote, by virtue of the applicable provisions of the Alcoholic Beverage Law, automatically terminated the club licenses issued to the appellants on December 1, 1948. R.S. 33:1-45.
The appeal is dismissed, without costs.