87 N.J. Super. 263 (1965)
208 A.2d 828
CORNELIUS W. TRAVIS, PLAINTIFF,
v.
WARREN PINTO AND WILLIAM D. VAN ZANDT, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 31, 1965.
Mr. Cornelius W. Travis, pro se.
Mr. Eugene T. Urbaniak, Deputy Attorney General, for defendants (Mr. Arthur J. Sills, Attorney General, attorney).
*264 MARTINO, J.S.C.
This is a suit by an inmate of the Rahway Prison Farm against defendants Warren Pinto and William D. Van Zandt, respectively superintendent and chief deputy, of the Rahway Prison Farm, for damages for an assault committed upon plaintiff by a fellow inmate.
The testimony presented by plaintiff indicates that on August 8, 1962 he complained to a guard that a fellow inmate had threatened him, and as a precaution he and that inmate were placed in separate cells under double lock  explained as a form of protective custody until an investigation could be made. The two were then separately interviewed by defendant Van Zandt, to whom plaintiff complained that the other inmate had wanted to indulge in homosexual activities, and because he had resisted such advances he had been threatened with serious harm. Van Zandt spoke with the inmate, who denied he had threatened plaintiff's life but explained that plaintiff owed him cigarettes which he had loaned plaintiff, and also cigarettes for laundry work done for plaintiff at his request. The inmate denied any attempt to be involved with plaintiff homosexually. After this interview Van Zandt called upon plaintiff and explained the inmate's denial of any threats to plaintiff's life and his admission of the existence of a dispute over plaintiff's refusal to pay the cigarette debt he owed. Van Zandt testified that after this explanation plaintiff stated that if that was all the inmate wanted, he would pay him back. Van Zandt then inquired of plaintiff whether he was afraid to be released from protective custody, and plaintiff indicated that he desired to be released.
On August 11, 1962 the inmates of Rahway Prison Farm attended a motion picture show on the prison premises. At the end of the picture and as the inmates were filing out, plaintiff felt a blow on his back, as if someone had struck his shoulder to gain his attention. As he turned the inmate struck him in the face with what turned out to be a razor blade. One of the guards drove plaintiff to the Rahway General Hospital where it was discovered that the blow on the back was actually a razor cut which required 15 stitches. The *265 cut on the face required 14. Plaintiff was then returned to the prison farm infirmary where he remained for a period of time until the sutures were removed.
Plaintiff exhibited the face scar and complains of severe pain over a long period of time, as well as disfigurement as a result of the assault. Plaintiff also complains that the prison officials have refused him plastic surgery to remove the scars, and that he has developed a nervous condition and an inferiority complex and has difficulty in sleeping.
Defendant Pinto was called as a witness by plaintiff. He apparently had been unaware of the assault until a report was made to him. It is undisputed that he took no active part in plaintiff's release from protective custody. Plaintiff did request Pinto to arrange for plastic surgery to remove the disfiguring marks. It is conceded that as a result of that request plaintiff was examined by two physicians, employees of the State; neither surgeon recommended plastic surgery, and after several consultations the doctors either advised plaintiff against it or refused to perform it.
At the close of plaintiff's case defendants moved for an involuntary dismissal of the action for the reason that as public officials they were performing a public duty, which duty was of a discretionary nature and, further, that they are immune from liability in that their conduct toward plaintiff lacked malice and was in good faith. In addition, defendants plead immunity under the provisions of R.S. 30:4-16. In view of the conclusions reached, an interpretation of this statute will not be necessary.
No reported case of a plenary trial of the issues raised in this litigation has ever been reported in this State. There was an expression of the applicable law to a situation of this type in an appeal from a motion granted to dismiss a complaint for failure to state a claim, as provided by R.R. 4:12-2(e). The court in Kisielewski v. State, 68 N.J. Super. 258 (App. Div. 1961) said:
"Whether a public officer, or employee, is clothed with immunity in the performance or nonperformance of an act in the course of his *266 public service, depends upon the nature of his duties and the nature and quality of the allegedly tortious act or omission with which he is charged.
It is well recognized in the law that an officer is not absolved for his private or personal torts. Prosser on Torts, § 109, p. 780 (1955), and where he commits a tort in the performance of official duties the question arises of whether his duties are `discretionary or quasi-judicial,' in which event he is immune from suit, or whether they are `ministerial,' in which event he becomes liable for them regardless of good faith. Prosser, supra, at pages 781-782." (at p. 262)
State to Use of Clark v. Ferling, 220 Md. 109, 151 A.2d 137 (Ct. App. 1959), was a suit by the representative of a deceased infant inmate of a reformatory against the superintendent of that reformatory for the infant's alleged wrongful death from injuries inflicted by fellow inmates. A judgment in favor of the superintendent was affirmed. He was held to be a public officer, and his duties, in safely confining inmates, were public in character and "quasi-judicial" in nature in that they involved exercise of discretion. Therefore, the superintendent was not liable for the inmate's wrongful death, at least in the absence of malice or evil purpose on the part of the superintendent, or if he did not know of some unusual danger to the inmate, or participate in inflicting the injuries. The court held:
"The position of superintendent of the Maryland State Reformatory for Males is authorized and directed by Code * * *, the incumbent's duties are continuing in their nature and not occasional and call for the exercise of some portion of the sovereignty of the State; hence, there can be no doubt that the occupant thereof fills a public civil office and exercises important governmental functions in the performance of his duties. [Cases cited] Nearly all of the text-writers and a great number of the cases attempt, with some variations, to classify the duties of public officers as they relate to tort liability or immunity into three general heads: political, judicial (including quasi-judicial) and ministerial. Harper and James, op. cit., Secs. 29.8, 29.9, 29.10; 2 Shearman and Redfield, op. cit., Sec. 323 et seq., 2 Cooley, Torts, (4th Ed.), Sec. 296. The first class is performed by the executive and legislative branches of the government and their subordinates, who owe duties to the public and the public alone. The second class is carried out by judicial and quasi-judicial officers. One text-book, Shearman and Redfield, op. cit., Sec. 325, states that any officer, sworn to act faithfully according to the best of his ability and according as things *267 shall appear to him, is, at least, a quasi-judicial officer. And cf. Harper and James, op. cit., p. 1641. The third class, ministerial refers to duties in respect to which nothing is left to discretion as distinguished from those where the official has the freedom and authority to make decisions and choices.
It is obvious that the case at bar does not involve the first class of public duties mentioned in the last paragraph. We think, however, the duties of the appellee herein of which complaint is made in the declaration fall within that class which has been designated as quasi-judicial, and, as stated above, involve the exercise of a considerable latitude of discretion. As the chief executive officer of the Maryland State Reformatory, he is the custodian of its inmates and the proper performance of the functions of his office, without detailing his duties, requires him to make many decisions that call for the exercise of judgment and discretion. When the complaint is for the failure to perform or properly to perform duties falling within this category, the text-writers and cases, while recognizing that judicial officers are liable for the negligent performance of purely ministerial duties under some circumstances, seem to be in universal accord in holding that the public officer is immune from liability, at least, in the absence of a showing of malice. Cocking v. Wade, 87 Md. 529, 40 A. 104, 40 L.R.A. 628; Shearman and Redfield, op. cit., Secs. 324, 325; Cooley, op. cit., Secs. 299, 300; Harper and James, op. cit., Sec. 29.10."
Generally, an official duty is ministerial when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts. Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of the means to an end, and discretion in determining how or whether the act shall be done or the course pursued. 14 A.L.R.2d 357 (1950).
From the evidence presented it clearly appears that Pinto as superintendent (often referred to as "warden"), and Van Zandt, his chief deputy, had duties which called for the exercise of considerable discretion. Van Zandt apparently, through the prison farm personnel, moved swiftly to separate the prisoners before any physical assault was committed and then began his investigation to determine the potential of any harm to plaintiff. If physical assault had been made upon plaintiff before he was placed under double lock or protective custody, the forseeability of further harm to him might have required defendants to move with more caution. After a full investigation and an explanation to plaintiff, and his request *268 to be released from protective custody, there came into play an exercise of discretion on the part of either defendant which his duties permitted him to exercise. No charge of malice or evil purpose is intimated on the part of either or both defendants. The evidence indicates no right of action on the part of this plaintiff and, therefore, the motion for involuntary dismissal is granted.