Sharlene COXSON, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, Commonwealth of Pennsylvania Department of Public Welfare, and Polk Center, Defendants.

Civil Action No. 95–106 ERIE.

United States District Court, W.D. Pennsylvania.

Feb. 21, 1996.

Joel S. Sansone, Scanlon & Sansone, Pittsburgh, PA, for plaintiff.

Gloria A. Tischuk, Office of the Attorney General, Pittsburgh, PA, for defendants.

*MEMORANDUM OPINION*

McLAUGHLIN, District Judge.

Sharlene Coxson has filed this action under 42 U.S.C. § 1983[1] against Defendants the Commonwealth of Pennsylvania (the "Commonwealth"), the Commonwealth Department of Public Welfare ("DPW"), and the Polk Center ("Polk"), alleging violations of her rights under the Fifth and Fourteenth Amendments to the United States Constitution. Defendants have moved to dismiss the case. Because this Court concludes that Plaintiff's claims are barred by the Eleventh Amendment, we will grant Defendants' motion and dismiss the case with prejudice.

## I. BACKGROUND

The gravamen of Plaintiff's complaint is that, as a result of state felony criminal charges filed against her, Plaintiff was suspended from her employment at Polk without pay and without due process of law. Plaintiff alleges that her April 7, 1993 suspension was carried out pursuant to section III of the Governor's Code of Conduct for Commonwealth employees and section 7174 of DPW's administrative manual regarding discipline of Commonwealth employees. On or about May 12, 1993, Plaintiff was terminated from her position with the Polk Center.

Plaintiff alleges that, during the interim between her suspension and termination, Defendants failed to properly investigate the charges against her. She claims that, had a proper investigation been performed, Defendants would have known that she was not guilty of any of the crimes charged. In April of 1994, the charges against Plaintiff were dropped. In May of 1994, Plaintiff was reinstated to her position without any explanation and without reimbursement for her lost wages and/or other employment benefits.

Plaintiff avers that, at all times relevant herein, Defendants had a longstanding official custom, practice, pattern, policy and/or procedure of suspending and terminating individuals charged of crimes prior to the dis-

---

1. Section 1983 provides, in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

position of the charges and thereafter refusing to reimburse those same individuals for their resulting damages. It is alleged that these policies, executed pursuant to the Governor's Code of Conduct and DPW's rules and regulations, are unconstitutional and that the application of these policies violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks damages in excess of $30,000 for these alleged violations.

Defendants move for dismissal of this action on several bases. First, Defendants argue that this Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the Eleventh Amendment. Second, Defendants claim that the complaint fails to state a cognizable claim inasmuch as the Commonwealth Defendants are not persons subject to liability under § 1983. Third, Defendants argue that Plaintiff's Fifth Amendment claims cannot provide a basis for relief because that amendment applies only to actions by the federal government. To the extent that any state law claims are presented, Defendants argue that such claims are barred by Eleventh Amendment immunity and sovereign immunity. Finally, Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations and that, in any event, there is no constitutional right to an adequate investigation. Because we find the first argument dispositive, we need not address these other bases for dismissal.

## II. *STANDARD OF REVIEW*

■ Dismissal for lack of subject matter jurisdiction is appropriate only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1280–81 (3d Cir.1993) (quoting

*Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir.1987)). "The threshold to withstand a motion to dismiss under Fed. R.Civ.P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989). *See also Bonnett Enterprises, Inc. v. United States,* 889 F.Supp. 208, 209–10 (W.D.Pa.1995). The plaintiff bears the burden of persuasion on a motion under Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

## III. *DISCUSSION*

■ The Eleventh Amendment to the United States Constitution provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It is well established that the Eleventh Amendment bars civil rights actions in federal court where the suit is brought by a private party against a state or agencies or departments created by the state which have no existence apart from the state. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978); *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984).[2]

■ Moreover, while a state's general waiver of sovereign immunity may subject it to suit in a state court, it does not also waive Eleventh Amendment immunity unless the state statute or constitutional provision specifies the state's intention to subject itself to suit in federal court. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 247, 105 S.Ct. 3142, 3146–47, 3149–50, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital*

---

**2.** Although the amendment refers only to suits against states brought by citizens of different or foreign states, courts have consistently applied Eleventh Amendment immunity to suits brought by citizens of the defendant state as well. *See, e.g., Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 97–98, 100, 104 S.Ct. 900,

906–07, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Flesch v. Eastern Pa. Psychiatric Inst.,* 434 F.Supp. 963, 976 (E.D.Pa.1977).

*v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974); *Skehan v. Board of Trustees of Bloomsburg,* 669 F.2d 142, 148 (3d Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). Pennsylvania has in fact specifically reserved its immunity under the Eleventh Amendment in 42 Pa.Cons.Stat.Ann. § 8521(b) (1982).[3] Nothing in § 1983 overrides the state immunity otherwise protected under the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65–71, 109 S.Ct. 2304, 2309–12, 105 L.Ed.2d 45 (1989) (holding that state, state agencies, and state officials acting in their official capacities are not "persons" subject to suit under § 1983). *See also Quern v. Jordan,* 440 U.S. 332, 338–45, 99 S.Ct. 1139, 1143–47, 59 L.Ed.2d 358 (1979).

■ In light of these well established principles, we find that Plaintiff's claims against the Commonwealth are so clearly foreclosed as not to present any viable federal controversy. We also find no basis to depart from the ruling of the United States District Court for the Eastern District of Pennsylvania in *Flesch v. Eastern Pa. Psychiatric Inst.,* 434 F.Supp. 963 (E.D.Pa.1977), wherein the court stated that the Department of Public Welfare is a part of the Commonwealth and subject to Eleventh Amendment immunity. In so concluding, the *Flesch* court observed that "[t]he Department is specifically designated as an 'administrative department' of the Commonwealth and all of its powers and duties are exercised as an administrative arm of the state." 434 F.Supp. at 977 (citing to Administrative Code of 1929 §§ 201, 2301 *et seq.,* PA.STAT.ANN. tit. 71, §§ 61, 591 *et seq.;* Public Welfare Code, PA.STAT.ANN. tit. 62, § 101 *et seq.*). *See also White v. Beal,* 413 F.Supp. 1141, 1147 (E.D.Pa.1976) (finding it "clear that the Department [of Public Welfare] is the alter ego of the state and, hence, is immune from suit before this court by virtue of the Eleventh Amendment."). The Commonwealth and DPW are therefore immune from suit.

■ Plaintiff does not dispute this point and acknowledges that the Commonwealth and DPW are only nominal parties to this action. She argues, however, that there is an insufficient record from which to determine whether Polk is similarly protected by the Eleventh Amendment.

■ Both Plaintiff and Defendants cite this Court to *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989) and *Urbano v. Board of Managers,* 415 F.2d 247, 251–52 (3d Cir.), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), as setting forth the relevant test for Eleventh Amendment immunity. Pursuant to those cases, the following factors are to be considered:

1. Whether the money that would pay the judgment would come from the state ( [i.e.]—whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

2. The status of the agency under state law ( [i.e.]—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

3. What degree of autonomy the agency has.

*Fitchik,* 873 F.2d at 659 (citing *Urbano* ). Plaintiff contends that the record must be further developed on the issues of whether the source of any judgment against Polk would be paid from the state treasury, whether the Commonwealth has immunized itself from responsibility for Polk's debts, whether Polk is separately incorporated, whether Polk can sue in its own right, whether Polk is exempt from taxation and whether it is generally autonomous.

The Court disagrees and finds that, under the circumstances, no further development of the record is necessary. Initially, we note Plaintiff's own averment that:

> Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

---

**3.** That statute provides: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in

Defendant Polk Center is a mental health and mental retardation facility owned and operated by Defendant Department of Public Welfare and Defendant Commonwealth of Pennsylvania ...

(Complaint, ¶ 3.) Elsewhere in her complaint, Plaintiff alleges that she was an employee of the Commonwealth and DPW by virtue of her employment at Polk. (*Id.* at ¶¶ 1, 13.) She also claims that the policies which violated her rights were policies of the Commonwealth and DPW, carried out by Polk. (*Id.* at ¶¶ 8–11, 23–26.) Finally, it is alleged that Plaintiff was suspended and terminated by the personnel director of Polk Center, acting on behalf of Karen Snider, the Commonwealth's Secretary of Public Welfare. (*Id.* at ¶¶ 16, 17.) Taking as true Plaintiff's own allegations, Polk is an arm of the Commonwealth.

More importantly, Pennsylvania statutory law treats Polk as a part of the Commonwealth. The Pennsylvania Administrative Code of 1929 recognizes the Board of Trustees of the Polk Center as a departmental administrative board within DPW. PA. STAT.ANN. tit. 71, § 62 (1990). Polk is specifically recognized as a state institution at PA.STAT.ANN. tit. 71, § 111 (1990). The Pennsylvania Public Welfare Code defines "state institutions" to include "all hospitals for the mentally ill or any other institutions for the mentally retarded ... within this Commonwealth, *maintained in whole by the Commonwealth* and whose boards of trustees are departmental administrative boards within the department [of Public Welfare]." PA. STAT.ANN. tit. 62, § 301 (1968) (emphasis supplied). Section 304 of the Public Welfare Code specifies that the costs of administering, operating, maintaining and developing state institutions shall be born by the Commonwealth, through moneys specifically appropriated to DPW. *Id.* at § 304. Other provisions of the Code allow for the supervision and general management of state institutions by DPW. *See, e.g.,* PA.STAT.ANN. tit. 62, §§ 302–310 (1968). *See also McDonald v. Commonwealth, Polk Center,* 62 F.3d 92, 93–94 (3d Cir.1995) (describing Polk Center, defendant in ADA action, as a "residential institution for the mentally retarded operated by the Pennsylvania Department of Public Welfare"); *Heifetz v. Philadelphia State Hospital,* 22 Pa.Commw. 325, 329 n. 3, 348 A.2d 455, 457 n. 3 (1975) (defendant was by definition a state institution within the Department of Public Welfare and was supported and funded by appropriations to that department; thus, defendant was part of the Commonwealth and able to share in state's sovereign immunity from state law claims).

Under these circumstances, we perceive no need for further development of the record. Pennsylvania law clearly recognizes Polk as a state institution, maintained in whole and supervised by the state. Any award of damages to Plaintiff would necessarily come from the state treasury and, thus, the most significant factor as set forth in *Fitchik* and *Urbano* is satisfied. *Fitchik,* 873 F.2d at 659; *Urbano,* 415 F.2d at 251. We conclude that the Polk Center is a part of the Commonwealth and, as such, is immune from Plaintiff's suit by virtue of the Eleventh Amendment.

### IV. *CONCLUSION*

Based upon the foregoing, this Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims. Defendants' motion to dismiss will therefore be granted in accordance with Fed.R.Civ.P. 12(b)(1).