**Twyman MILLER, Plaintiff,**

v.

**RUTGERS, the State University of New Jersey, Patrolman Maria Santana and Patrolman Stanley Kosinski, Defendants.**

**Civ. A. No. 84–4580.**

United States District Court,
D. New Jersey.

Oct. 16, 1985.

Francine A. Gargano, North Plainfield, N.J., for plaintiff.

Cummins, Dunn & Pashman by Edward G. Sponzilli,. Hackensack, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

### Introduction

This action is brought by plaintiff Twyman Miller against Rutgers, The State University of New Jersey and two Rutgers police officers, Maria Santana and Stanley Kosinski. Plaintiff asserts claims against defendants under 42 U.S.C. §§ 1983, 1985(2) and (3) and 1988, and pursuant to the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. This action arises out of an encounter between plaintiff and the defendant police officers on the Rutgers campus in which plaintiff alleges that the officers used excessive force in effecting his arrest. Defendants have now moved for summary judgment dismissing the complaint on the ground that the suit is barred by the Eleventh Amendment. Alternatively, defendants move for summary judgment dismissing plaintiff's complaint on the ground that it lacks specificity, or for partial summary judgment dismissing plaintiff's claims under the First, Fifth and Sixth Amendments, and under 42 U.S.C. §§ 1983, 1985(2) and (3). Defendants have also moved for leave to amend their answer to assert an additional affirmative defense. Plaintiff has cross-moved to amend his complaint to assert equal protection claims against the University.

### Statement of Facts

This is a motion for summary judgment brought by defendants, and the facts will therefore be presented in a light most favorable to plaintiff, the nonmoving party. However, since the facts out of which this action arises are not critical to the instant motion, it is not necessary to give a detailed rendering of the event precipitating the lawsuit.

On November 5, 1983 the Rutgers police were called by a student in a University dormitory at Livingston College in Piscataway and informed that an unidentified person was unconscious or asleep in the hallway. The two defendant police officers responded to the call. They found plaintiff unconscious in the hall and, according to plaintiff, began to kick him to awaken him. When he regained consciousness, plaintiff was in a groggy and incoherent state due to his prior ingestion of a large quantity of alcohol. He attempted to leave the presence of the police officers, who stopped and questioned him. The officers maintain that they tried to escort plaintiff from the building, and that plaintiff refused to go and instead began to struggle with, and to assault the officers. According to the officers, they were required to defend themselves and to subdue plaintiff. Plaintiff, however, appears to contend that the police beat him for no apparent reason, causing him to sustain personal and permanent injuries.

Plaintiff was, at some point, placed under arrest for assault and resisting arrest. He was apparently taken to two different police departments and eventually to the county jail. He alleges that he was not offered medical attention, and that his bail was so excessive that he had to remain in jail for two weeks.

Plaintiff filed criminal charges of aggravated assault against the two police officers. These charges were no-billed by the Middlesex County Grand Jury. The same Grand Jury indicted plaintiff on charges of assaulting the police officers, resisting arrest, being a disorderly person and obstructing the police. Plaintiff was acquit-

ted of all charges by a jury after a trial in the Superior Court of New Jersey on June 26, 27 and 28, 1984.

In January 1984 plaintiff served a notice of claim on Rutgers and the defendant officers in accordance with the New Jersey Torts Claims Act. The defendants' response to these notices is not clear from the record. On November 7, 1984 plaintiff commenced this action. Plaintiff alleges that the police officers used excessive, illegal and unjustified force causing him to sustain severe temporary and permanent injuries (Count I). The officers are alleged to be agents of Rutgers, and Rutgers is claimed to be liable for their acts (Count II). Plaintiff further charges that Rutgers is liable for plaintiff's injuries because it was negligent in training, supervising and disciplining its police officers (Count III). Plaintiff claims that the acts of the defendants deprived him of his civil rights in violation of 42 U.S.C. §§ 1983, 1985(2) and (3) and 1988, and deprived him of his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (Count IV). In addition, plaintiff charges defendants with assault and battery (Count V) and false arrest (Count VI) under state law. Plaintiff seeks compensatory and punitive damages.

Defendants have now moved for summary judgment dismissing plaintiff's complaint on the ground that plaintiff's claims are barred by the Eleventh Amendment. Defendants alternatively move for summary judgment dismissing the complaint for failure to be sufficiently specific, or for partial summary judgment on plaintiff's claims asserted under the First, Fifth and Sixth Amendments and under 42 U.S.C. §§ 1983, 1985(2) and (3) on the ground that those claims fail to state a cause of action. Defendants also move for leave to amend their answer to assert the affirmative defense of Eleventh Amendment immunity. Plaintiff has cross-moved for leave to amend his complaint to assert a claim that Rutgers has not provided equal protection of the law.

*Discussion*

Defendants have moved for summary judgment on the ground that Rutgers University is an instrumentality or alter ego of the State of New Jersey and that it and the individual police officers are therefore immune from a suit for monetary damages pursuant to the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Pursuant to this Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67, 78 (1984) *quoting Employees v. Missouri Public Health and Welfare Department*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). The sole exception recognized by the Supreme Court to this jurisdictional bar involves "suit[s] ... brought only against state officials" in which the constitutionality of the officials' action is challenged. *Pennhurst, supra,* 465 U.S. at ——, 104 S.Ct. at 908, 79 L.Ed.2d at 79. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the Supreme Court has also held that the enactment of 42 U.S.C. §§ 1981 and 1983 was not intended to overcome a state's Eleventh Amendment immunity from suit. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Rutgers claims that it is an instrumentality of the State of New Jersey, and is thus subject to immunity from plaintiff's § 1983 claims as well as his other constitutional and state law claims.

It appears that there are no reported decisions by the federal courts in New Jersey which have considered whether Rutgers is immune from a civil rights action by virtue of the Eleventh Amendment. The factors for determining whether a state

entity is considered the alter ego of a state and thus entitled to immunity were set forth by the Third Circuit in *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970):

> "Local law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.
>
> Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations."

*Id.* at 250–251, *quoting Krisel v. Duran*, 258 F.Supp. 845, 849 (S.D.N.Y.1966), *aff'd*, 386 F.2d 179 (2d Cir.1967), *cert. denied*, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968). *See also Blake v. Kline*, 612 F.2d 718 (3d Cir.), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1979) (applying *Urbano* factors).

■ Applying the *Urbano* factors to Rutgers, I find that the University is an instrumentality of the state. Both the statute under which Rutgers is incorporated and case law expressly so state. N.J.S.A. 18A:65–2; *Rutgers, The State University v. Piluso*, 113 N.J.Super. 65, 272 A.2d 573 (Law Div.1971), *aff'd*, 60 N.J. 142, 286 A.2d 697 (1972); *Trustees of Rutgers College v. Richman*, 41 N.J.Super. 259, 296, 125 A.2d 10 (Ch.Div.1956).

As to the most important factor, the source of funds for any judgment, Rutgers has submitted the affidavit of Charles Coyle, Rutgers' Assistant Vice-President for Budget and Resource Studies, in support of its contention that a judgment would be paid, at least in part, from state appropriations. The affidavit describes the University's four sources of income. Coyle Aff. ¶ 2. Two types of income, auxiliary and restricted, may only be used for certain purposes. Coyle Aff. ¶¶ 3–5. The other two types of incomes, general University, or self-generating, income and appropriations from the State of New Jersey, are commingled and together comprise 72–73% of the total University budget. These funds are used for general operations of the University. Coyle Aff. ¶¶ 6–11.

Rutgers is self-insured on all claims under $250,000. According to the Coyle affidavit, any judgment against Rutgers in this matter would have to be satisfied from the commingled funds received from the State of New Jersey and general University funds to the extent of Rutgers' self-insurance. Therefore, Rutgers contends that such a judgment would be satisfied, at least in part, from state appropriations.

The Coyle affidavit also sets forth the process by which Rutgers receives state appropriations. The University must submit its operating budget request to the New Jersey Department of Higher Education. It does so after calculating projected self-generating income and itemizing its budget. These calculations are also based on a projected state appropriation supplied by the Department of Higher Education. The budget request is reviewed first by that Department, and then by the Board of Higher Education. The request is then submitted to the New Jersey Office of Management and Budget, then presented to the Governor, who in turn submits it to the Legislature. Ultimate approval comes from the Legislature and, once approved, the University cannot transfer funds from non-salary to salary accounts or from the physical plant account to other accounts without approval from the Chancellor of Higher Education and the Director of the New Jersey Division of Budgeting and Accountings. Coyle Aff. ¶¶ 11–17. Capital

budget requests are made in a similar manner. Coyle Aff. ¶ 19.

Plaintiff has made no submissions countering the assertions about the University budget set forth in the Coyle affidavit. Plaintiff merely states that he has not had an opportunity to depose Mr. Coyle, and that he therefore has no "personal knowledge on which to counter the claims set forth [in the affidavit]". Plaintiff's Brief at 5.

This is defendants' motion for summary judgment and, in order to prevail on this motion, defendants must prove that "there is no genuine issue as to any material fact and that [they] are entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. While all evidence submitted must be viewed in a light most favorable to plaintiff, the party opposing the motion, plaintiff may not rest upon the mere allegations or denial of his pleadings. Rather, plaintiff must set forth specific facts showing a genuine issue for trial. *Wahl v. Rexnord*, 624 F.2d 1169, 1181 (3d Cir.1980); *Delong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1139 (3d Cir.1980). Here, on the most important factor in determining whether Rutgers is a state entity for purpose of Eleventh Amendment immunity, the question of the source of funds for any judgment in this matter, plaintiff has submitted no evidence demonstrating that there is a factual issue as to the source of such funds. Plaintiff does request a continuance of this motion in order to allow for further discovery on this issue. However, plaintiff does not state that he has any reason to believe that Mr. Coyle's description of Rutgers' funding and budgetary process is inaccurate, and gives no indication that he has any particular target for discovery that would produce a conclusion different from Mr. Coyle's. I conclude, therefore, that plaintiff has not demonstrated that a factual question exists as to the source of funds for any judgment that may be obtained against Rutgers in this case. I find that the first $250,000 of such a judgment would be paid out of the commingled funds derived from the University's self-generating income and from state appropriations. Such a judgment would,

therefore, be obtained in substantial measure from state funds. This brings the University within the protection of the Eleventh Amendment. In so concluding, I follow decisions of the Sixth and Fifth Circuit Courts of Appeals in which it was held that where judgments would be paid out of commingled funds, the judgment would, in effect, be against the state or would interfere with the state's fiscal autonomy. *Hall v. Medical College of Ohio*, 742 F.2d 299, 305 (6th Cir.1985) (applying *Urbano* factors); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 560 (5th Cir. 1982); *Jagnandan v. Giles*, 538 F.2d 1166, 1176 (5th Cir.1976).

Plaintiff further contends that, even if Mr. Coyle's affidavit is assumed to be true, the application of the other *Urbano* factors in light of New Jersey statutes and case law demonstrate that the University is not an instrumentality of the state. Plaintiff points out that Rutgers is separately incorporated, N.J.S.A. 18A:65–2, and that the incorporating statute specifically provides for self-government of the University. In addition, plaintiff notes that the University has the power to sue and be sued, and that the statute contains a provision stating that "No provision in this chapter contained shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit, of the State of New Jersey." N.J.S.A. 18A:65–8. Plaintiff refers to *Frank Briscoe Co. v. Rutgers, The State University*, 130 N.J.Super. 493, 327 A.2d 687 (Law Div.1974), in which the court held that the University's power to sue and be sued barred the University from asserting the defense of sovereign immunity in a contract action.

I find that the application of the remainder of the *Urbano* factors confirms my conclusion based on the source of funds for a judgment that Rutgers is an instrumentality of the State of New Jersey. As noted earlier, the Coyle affidavit sets forth the process by which Rutgers receives funds from the State Treasury, and that process demonstrates the substantial degree to which the state is involved in the University's budgeting process. As to the

governance of the University, the control, supervision, and conduct of the University is vested, by statute, in the University's Board of Governors and Board of Trustees. N.J.S.A. 18A:65–25 and 26.

The composition of the Board of Governors is comprised of two ex officio members without voting privileges, and eleven voting members. The ex officio members are the President of the University and the Chancellor of the New Jersey Department of Higher Education. The Chancellor of the Department of Higher Education is appointed by the Board of Higher Education, subject to the approval of the Governor of the State of New Jersey. Six of the eleven voting members of the Board of Governors are appointed by the Governor of New Jersey, with the advice and consent of the New Jersey Senate. The remaining five members are appointed by the Board of Trustees. N.J.S.A. 18A:65–14, N.J.S.A. 18A:3–20.

The composition of the Board of Trustees consists of ex officio members without vote, public members, alumni or alumnae, and charter members. The ex officio members are the President of the University and the Chancellor of the Department of Higher Education. There are eleven public members, all of whom are appointed by the Governor with the advice and consent of the New Jersey Senate. There are not less than twelve nor more than twenty alumni or alumnae trustees, all elected by the Board of Trustees. The charter trustees are those serving as such as of August 31, 1956, without definite term and those elected thereafter for a definite term. N.J.S.A. 18A:65–15.

Thus, both the governance of the University and its budget and expenditures are substantially in the control of the state, and I find that the degree to which the University is not autonomous also brings it within Eleventh Amendment protection. Moreover, as an educational institution, Rutgers is performing a governmental rather than a proprietary function. *See Handsome v. Rutgers, The State University*, 445 F.Supp. 1362, 1367 n. 7 (D.N.J. 1978). In addition, Rutgers is not subject to local taxation.

Application of most of the *Urbano* factors, therefore, demonstrates Rutgers' entitlement to Eleventh Amendment immunity. However, those factors are not satisfied in several instances. First, Rutgers is separately incorporated. Second, it has the power to sue and be sued. Third, the state is not directly liable for obligations incurred by Rutgers.

■ As to Rutgers' separate incorporation, I find that to be noncontrolling. A number of state universities have been held to be protected by the Eleventh Amendment despite separate incorporation. *See Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir.1976); *Wellman v. Trustees of Purdue University*, 581 F.Supp. 1228 (N.D.Ind. 1984).

■ As to Rutgers' ability to sue and be sued and the provision in the statute limiting the state's liability for Rutgers' obligations, I find that, at this point, these factors go to the question of whether Rutgers has waived its immunity. By focusing on these provisions plaintiff has, in essence, argued that such a waiver has occurred. Plaintiff finds support for that argument in *Frank Briscoe Co. v. Rutgers, The State University*, 130 N.J.Super. 493, 327 A.2d 687 (Law Div.1974), in which the court found the defense of sovereign immunity to be unavailable to Rutgers in a contract action.

A waiver of sovereign immunity is not, however, also a waiver of Eleventh Amendment immunity in a federal action. Thus, "where a public instrumentality is created with the right 'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal courts." *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959). *See also Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39 (2d Cir.1977). Whether a "sue and be sued" clause is a waiver of Eleventh Amendment immunity is a federal question, *Trotman, supra*, at 39, and such a waiver will be found "only where stated 'by

the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974), *quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). *See also Atascadero State Hospital v. Scanlon,* — U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). I do not find that such a waiver has occurred here. Rutgers is subject to the New Jersey Torts Claims Act, and, under *Briscoe, supra,* may be sued in state court at least on contract claims. Rutgers may, therefore, be sued in this action in state court, provided that the requirements of the New Jersey Torts Claims Act have been met. As an instrumentality of the state, however, Rutgers may not be sued by plaintiff in this court.

I note that in holding that the Eleventh Amendment applies to Rutgers, I am in accord with the majority of federal courts which have considered the applicability of the amendment to state universities. *See Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *Clay v. Texas Women's College,* 728 F.2d 714 (5th Cir.1984); *Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd sub nom., Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 488 (3d Cir.1978) (State college was immune under Eleventh Amendment even in light of decision of U.S. Supreme Court in *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ); *Perez v. Rodriguez,* 575 F.2d 21 (1st Cir. 1978); *Jagnandan v. Giles,* 538 F.2d 1166, 1175 (5th Cir.1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977) (where State exercised significant control over operation of university and treasury of State provided up to seventy-two (72%) percent of funds which funds were to be subject to fiscal control Eleventh Amendment applied); *Prebble v. Brodrick,* 535 F.2d 605 (10th Cir.1976) (action barred

against University of Wyoming which was governed by Board of Trustees appointed by governor and funded by appropriations from State legislature. *Id.* at 610); *Long v. Richardson,* 525 F.2d 74 (6th Cir.1975); *Thonen v. Jenkins,* 517 F.2d 3 (4th Cir. 1975); *McAdoo v. Toll,* 591 F.Supp. 1399, 1402 (D.Md.1984) (plaintiff's claims for retrospective monetary relief against University of Maryland are barred by Eleventh Amendment because damages awarded would be borne by taxpayers based on review of Maryland statutes respecting university); *Wellman v. Trustees of Purdue University,* 581 F.Supp. 1228, 1231 (N.D. Ind.1984) (because governor appoints trustees of Purdue, Purdue is funded largely, but not entirely, by State, State controls financing and may revise powers of trustees and Indiana legislature and State courts have defined Purdue as an instrumentality of the State, Eleventh Amendment bars suit); *Moxley v. Vernot,* 555 F.Supp. 554 (S.D.Cal.1982) (University of California, Irvine, is an arm of the State for purposes of Eleventh Amendment); *Vaughn v. Regents of University of California,* 504 F.Supp. 1349 (E.D.Cal.1981); *Weisbord v. Michigan State University,* 495 F.Supp. 1347 (W.D.Mich.1980).

■ Defendants also assert that plaintiff's claims against the individual police officers are barred by the Eleventh Amendment because plaintiff seeks retroactive relief against these defendants for actions taken by them in their official capacity as police officers for the University. Defendants rely primarily on *Edelman v. Jordan, supra,* in which the United States Supreme Court held that an equal protection claim against Illinois administrators of a federal-state program was barred by the Eleventh Amendment since a judgment against those officials could only be satisfied from the general revenues of the state. While prospective relief may be sought against state officials acting in their official capacity, "a monetary award indistinguishable from one against the state itself is prohibited by the Eleventh Amendment even when the suit is filed against nominal state officials." *Spicer v. Hilton,* 618 F.2d 232, 236 (3d Cir.

1980) *(citing Edelman v. Jordan, supra ).*
*See also Everett v. Schramm,* 772 F.2d
1114, 1118 (3d Cir.1985).

Plaintiff argues that even if Rutgers is found to be an instrumentality of the state, summary judgment should not be granted as to the claims against the individual officers because there is a factual question as to whether they were acting in their official capacity. Plaintiff's complaint, however, names the officers as defendants in their official capacity only and fails to allege claims against them for actions taken in their individual capacity. The officer defendants are named in the complaint as "Patrolman Maria Santana" and "Patrolman Stanley Kosinski". Further, the complaint alleges that the officers "were acting under color of law and under color of their authority as Police Officers of Rutgers." Complaint, Count I, ¶ 1.

The defendant officers are indemnified by the University and therefore a judgment against them would come from state revenues to the same extent as would a judgment against the University. Since plaintiff seeks retroactive relief against the officers for actions taken in their official capacity, I find that plaintiff's claims are barred by the Eleventh Amendment.

Since I am granting summary judgment dismissing plaintiff's entire complaint on Eleventh Amendment grounds, I find it unnecessary to consider defendants' alternative motions for summary judgment on the grounds of lack of specificity or for partial summary judgment. For the same reason I also have not considered either defendants' motion for leave to amend their answer or plaintiff's cross-motion for leave to amend his complaint.

*Conclusion*

Defendants' motion for summary judgment dismissing plaintiff's complaint on the grounds that plaintiff is barred by the Eleventh Amendment from bringing this suit in this court is granted. Counsel for defendants are requested to submit an appropriate form of order.