IN RE DETERMINATION OF EXECUTIVE COMMISSION ON ETHICAL STANDARDS RE: APPEARANCE OF RUTGERS ATTORNEYS BEFORE THE COUNCIL ON AFFORDABLE HOUSING ON BEHALF OF THE CIVIC LEAGUE, PLAINTIFFS.

Superior Court of New Jersey
Appellate Division

Submitted November 30, 1987—Decided February 3, 1988.

Before Judges PETRELLA, DREIER and BAIME.

*John Payne* and *Barbara Stark* attorneys for appellants Civic League of Greater New Brunswick, Inc. (*John Payne* and *Barbara Stark* on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent Executive Commission on Ethical Standards (*Michael R. Clancy,* Deputy Attorney General, of counsel; *Gayl R. Mazuco,* Deputy Attorney General, on the brief).

An *amicus curiae* brief was filed on behalf of the Public Advocate (*Alfred A. Slocum,* Public Advocate; *John P. Thurber* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The Civic League of Greater New Brunswick, Inc. (League) (previously known as the Urban League) filed a notice of appeal from an advisory opinion [1] issued by the Executive Commission on Ethical Standards (Commission) (see *N.J.S.A.* 52:13D–21) relating to its representation by certain professors employed by Rutgers, The State University (Rutgers). The advisory opinion had been sought by the League as a result of the transfer of certain *Mt. Laurel* [2] cases to the Council on Affordable Housing (COAH) created by the Fair Housing Act (*N.J.S.A.* 52:27D–301 *et seq.*) which became effective on July 2, 1985. We affirm the determination of the Commission.

The COAH is in the Executive Branch of State Government and was established "in, but not of the Department of Community Affairs." *N.J.S.A.* 52:27D–305a. The designation "in, but not of" is a result of the requirement in the 1947 New Jersey Constitution, Art. V, § 4, par. 1, which mandates that all executive and administrative offices are to be allocated to one of the "principal departments," except for "temporary commissions for special purposes." [3] *See Richman v. Neuberger*, 22

---

[1] An advisory opinion is not a final decision or action of a state administrative agency and hence is not appealable as of right. *R.* 2:2–3(a)(2). See discussion *infra* at pages 488–489.

[2] The *Mt. Laurel* designation refers generally to cases relating to the issue of affordable houses. See *Southern Burlington County NAACP v. Mt. Laurel*, 67 *N.J.* 151 (1975), appeal dism'd, *cert.* den. 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975) (*Mt. Laurel I*); *Southern Burlington County NAACP v. Mt. Laurel*, 92 *N.J.* 158 (1983) (*Mt. Laurel II*) and *Hills Development Co. v. Bernard Tp. in Somerset County*, 103 *N.J.* 1 (1986) (*Mt. Laurel III*).

[3] It has been held that the cited constitutional provision is satisfied when a unit or agency is placed "in," though not made part "of" a principal department. An example of this legislation is the enabling statute for the Public Defender (*N.J.S.A.* 2A:158A–3) allocating that office within the Department of the Public Advocate (*N.J.S.A.* 52:27E–1 *et seq.*). *See also* Hackensack Meadowlands Dev'pt Comm'n, *N.J.S.A.* 13:17–5; N.J. Water Supply Authority, *N.J.S.A.* 58:1B–4a; Hackensack Meadowlands Food Distribution Center Commission,

N.J. 28, 33 (1956) and *Richman v. Ligham*, 22 *N.J.* 40, 49 (1956).

Since 1983 the League has been represented before the courts in *Mt. Laurel* litigation against various municipalities in large part by attorneys on the staff of the Rutgers Law School Constitutional Litigation Clinic (Clinic) of Rutgers who are either law school professors or Clinic staff attorneys employed by Rutgers.

As a result of the transfer of some of the disputes with municipalities in the League's *Mt. Laurel* case to the COAH, see *Hills Development Co. v. Bernards Tp.*, 103 *N.J.* 1, 19–20 and 65 (1986), the League requested an advisory opinion on June 4, 1986 from the Commission as to:

> whether certain Rutgers Law School professors and staff attorneys ... may continue to represent the Civic League of Greater New Brunswick ... in connection with its claims against the municipalities of Cranbury, Monroe, Piscataway, South Brunswick, and South Plainfield (hereafter referred to collectively as 'the *Mt. Laurel* matters') which have been transferred from the Superior Court to the Council on Affordable Housing....

There is no dispute that the League is a private, nonprofit organization. It is conceded that the COAH is a "State agency" as defined in *N.J.S.A.* 52:13D–13a and that Rutgers' employees in the Clinic are "employees of Rutgers." The League asserts that the Rutgers' employees "are receiving no fee in connection with their representation of the Civic League," and have no "personal or pecuniary interest" in the outcome of the League's litigation. The State does not suggest that any "financial" or "actual" conflict is present here. However, we note that the court recently decided *Urban League of Greater*

---

*N.J.S.A.* 13:17A–4b; N.J. Casino Control Commission, *N.J.S.A.* 5:12–50. Additional entities "within" various executive departments, but "independent," include the N.J. Public Broadcasting Authority, *N.J.S.A.* 48:23–3; Pinelands Comm'n, *N.J.S.A.* 13:18A–4; Public Employment Rel. Comm'n, *N.J.S.A.* 34:13A–5.1; N.J. Highway Authority, *N.J.S.A.* 27:12B–4; N.J. Turnpike Auth., *N.J.S.A.* 27:23–3; N.J. Sports & Exposition Auth., *N.J.S.A.* 5:10–4.

*New Brunswick, et al v. Township Committee of the Township of Cranbury,* 222 *N.J.Super.* 131 (App.Div.1987), which held on the League's appeal that attorneys' fees may be awardable under the federal Civil Rights Act.[4]

In its brief on this appeal the League argues that there is no violation of the New Jersey Conflicts of Interest Law, *N.J.S.A.* 52:13D-12 *et seq.* (Conflicts Law) by the Rutgers' employees who are its attorneys because there is no actual conflict. The League argues that the "State employees" teach in the law school clinic and the representation arises in connection with appropriate educational duties; that Rutgers' teachers should be permitted to continue to represent the League before the COAH because of the unique circumstances of the *Mt. Laurel* litigation, and it would be neither just nor fair to deprive the League of their services as attorneys.

In an *amicus curiae* brief the Public Advocate argues that representation of the League by Rutgers' Clinic attorneys in proceedings before the COAH does not violate the Conflicts Law because such representation is outside the scope of conduct regulated by that law; that Clinic professors and staff attorneys are not "State employees" for purposes of the Conflicts Law, and proceedings before the COAH are brought "on behalf of a municipality" and thus meet an exemption from the prohibitions of the Conflicts Law.

In a February 6, 1987 letter, the Commission determined that

---

[4]The attorneys for the League might well have advised the Court in each appeal of the pendency of the other case and what could be construed to be inconsistent positions. See *R.P.C.* 3.3. The League is involved in both appeals and the identical attorneys participated in both appeals. In the *Urban League* case the attorneys sought, among other things, legal fees for the League apparently for their legal services. Presumably this would not include the efforts of law students, but the League's position is not clear to us.

"it would be a violation of § 16(b) [of the Conflicts Law] [5] for [the Rutgers employees] to continue with the representation of the Civic League of Greater New Brunswick before the Council on Affordable Housing." The letter also suggested that if there was dissatisfaction, the appropriate route for the Rutgers employees to take was to seek a legislative change. The Commission noted at its January 21, 1987 meeting that in Advisory Opinion No. 4 (December 15, 1972) it had concluded that "Rutgers may properly be termed an 'independent State instrumentality' and thus within the Conflicts [Law] definition of 'State agency.'"

I

Although the parties to this appeal seem to accept the "opinion" of the Commission as a final agency action from which an appeal may be taken, that position is not binding upon us. *Fivehouse v. Passaic Valley Water Comm'n*, 127 *N.J.Super.* 451, 457–458 (App.Div.1974), certif. den. 65 *N.J.* 565 (1974). Opinions of an administrative agency on which no action is based do not constitute "final agency action" which would be subject to appeal as of right. *N.J. Civil Service Ass'n v. State*, 88 *N.J.* 605, 611–612 (1982) (an Attorney General's opinion is not final agency action subject to appellate review); *Exxon Corp. v. Tp. of E. Brunswick*, 192 *N.J.Super.* 329, 336 (App. Div.1983), certif. den. 96 *N.J.* 312–313 (1984) (an "advisory opinion" letter from Director of Division of Taxation to assessors and county tax boards was "merely an advisory opinion rather than a final agency action," and not within Tax Court's jurisdiction to review); *Rutherford Lodge No. 547 v. Hock*, 1 *N.J.Super.* 223, 227–228 (App.Div.1949) (opinion of State Alcoholic Beverage Control Commissioner not final decision). The League should have sought leave to appeal pursuant to *R.* 2:2–4

[5] *N.J.S.A.* 52:13D–16b. This section was amended by *L.*1987, *c.* 432, § 3, approved on January 15, 1988, and to take effect 30 days after enactment. The amendments to this section were only technical and do not affect our decision.

and *R.* 2:5–6(a). We could, therefore, dismiss the appeal pursuant to *R.* 2:8–2. However, on our own motion we grant leave to appeal *nunc pro tunc* because of the public policy nature of the conflict of interest law question presented.

## II

On June 2, 1971 the most recent version of the Conflicts Law, then limited to and applicable to persons in the executive and legislative branches of government, was approved. *L.* 1971, *c.* 182. It became effective on January 11, 1972, and replaced the predecessor statute which it repealed, *i.e., N.J.S.A.* 52:13D–1 *et seq.* (*L.*1967, *c.* 229). Certain additional amendments were enacted on January 15, 1988 when the Governor signed *L.*1987, *c.* 432. These amendments made the scope of the law even broader.

The focus of the dispute on this appeal centers on a provision of the Conflicts Law contained in *N.J.S.A.* 52:13D–16b which provides in pertinent part as follows:

> b. No State officer or employee or member of the Legislature ... shall represent, appear for, or negotiate on behalf of ... any person or party other than the State in connection with *any* cause, proceeding, application or other matter pending before *any* State agency.... (emphasis added)

"State officer or employee" is defined in *N.J.S.A.* 52:13D–13b as: *"any* person, other than a member of the Legislature, holding an office or employment in a State agency...." (emphasis added).

*N.J.S.A.* 52:13D–16c exempts from the scope of subsection 16b appearances "before any court of record of this State," and before certain specified State agencies, including the Division on Civil Rights, the Workers Compensation Division and others which do not apply here. The COAH is not among the agencies specified in this section.

The term "State agency" is defined, insofar as pertains to the Executive Branch of the State Government, as:

> ... any of the principal departments in the Executive branch of the State Government, and any division, board, bureau, office, commission or other

instrumentality within or created by such department, ... and *any indepen-dent State* authority, commission, *instrumentality or agency*.... [*N.J.S.A.* 52:13D–13a] (emphasis added)

Rutgers was designated "the instrumentality of the State for the purpose of operating the state university" by *L.*1956, *c.* 61, effective June 1, 1956 (*N.J.S.A.* 18A:65–2). This law constituted Rutgers as a "full-fledged State agency," *Rutgers v. Piluso*, 60 *N.J.* 142, 157 (1972); "an arm of the State," *Trustees of Rutgers College in N.J. v. Richman*, 41 *N.J.Super.* 259, 284 (Ch.Div.1956); "an *alter ego* of the State," *id.* at 298, and "a public instrumentality for the accomplishment of a public purpose, *i.e.* public higher education the State." *Id.* at 299. *See also Rutgers v. Kugler*, 110 *N.J.Super.* 424, 427 (Law Div. 1970), aff'd o.b. 58 *N.J.* 113 (1971) (Rutgers assumed "State agency or State *alter ego* status").[6] In addition, *N.J.S.A.* 18A:65–73 accords eligibility for membership in the public employees' retirement system to "[a]ny person holding office, position or employment" at Rutgers.

The League and the Rutgers professors argue that it was error for the Commission to conclude that Rutgers was an instrumentality of the State under the Conflicts Law. They contend that the Commission's advisory opinion that Rutgers' employees are subject to the Conflicts Law subverts the legislative goal of promoting public higher education. They assert that the opinion undermines the fundamental purpose of the State University Law, *N.J.S.A.* 18A:65–1 *et seq.*, by restricting critical educational activities by Rutgers' professors—here, the clinical training of law students. They, as well as *amicus*, also

---

[6]The Legislature has recently given more autonomy to State colleges and universities. See *L.*1986, *c.* 42 and 43. However, our review of those statutes does not disclose any inroads on the status of Rutgers or any of the State colleges as instrumentalities of the State. There is no basis for finding any implied repealer of the Conflicts Law, particularly in view of the disfavored status of implied repealers. See *Mahwah Tp. v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 281 (1985), *cert.* den. 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985); *New Jersey State Policemen's Benev. Ass'n of New Jersey, Inc. v. Town of Morristown*, 65 *N.J.* 160, 164 (1974).

argue that under various statutes and certain decisions Rutgers is considered an instrumentality of the State for some purposes but not for others.[7] Hence, the Clinic employees contend that they should not be considered State employees for purposes of the Conflicts Law under the circumstances here.

The Attorney General concedes that Rutgers "may not have all the characteristics of a State agency in all situations." For example, the Administrative Procedure Act (*N.J.S.A.* 52:14B-1 *et seq.*), which became effective September 1, 1969, defines "State agency" as only including:

> ... each *of the principal departments in the executive branch of the State government,* and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers *within any such departments* now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor. [*N.J.S.A.* 52:14B-2] (emphasis added)

It was noted in *Kovats v. Rutgers, the State University,* 822 *F.*2d 1303 (3d Cir.1987), that while Rutgers was designated an "instrumentality of the State" under *N.J.S.A.* 18A:65-2, the "definition of State agency for purposes of New Jersey Administrative Procedure Act [was] inapplicable to Rutgers." *Id.* at 1310.

The Attorney General argues that as an independent State instrumentality Rutgers is subsumed in the definition of a "State agency" as contained in the Conflicts Law. The Attor-

---

[7]*E.g.,* Civil Service laws, see *N.J.S.A.* 18A:65-25i (personnel decisions to be made in accordance with budget only); competitive bidding statutes, see *N.J.S.A.* 52:34-6 *et seq.;* see *Rutgers v. Kugler,* 110 *N.J.Super.* 424, 434 (Law Div.1970), aff'd o.b. 58 *N.J.* 113 (1971); administrative procedure requirements, *N.J.S.A.* 52:14B-2 (Rutgers excluded from definition of "State agency"); *see also* New Jersey Contractual Liability Act, *N.J.S.A.* 59:13-2 (specifically excluding Rutgers from definition of "State") and *Briscoe v. Rutgers,* 130 *N.J.Super.* 493, 506 (Law Div.1974); Tort Claims Act, *N.J.S.A.* 59:1-3 (Rutgers not covered by definition of "State," but under definition of "public entities" which specifically includes Rutgers) (Comment) and *Briscoe, supra,* 130 *N.J.Super.* at 498. See generally *Kovats v. Rutgers, The State University,* 822 *F.*2d 1302, 1310-1311 (3d Cir.1987). But see *N.J.S.A.* 18A:65-73 which accords Rutgers employees eligibility in the Public Employees' Retirement System.

ney General observes that Rutgers itself recognizes this and specifically states in its 1986–1988 Faculty Handbook:

> Since Rutgers is an 'instrumentality' of the State of New Jersey, University Regulations [3.71] also adjure faculty to observe 'any pertinent statutes and regulations of the State of New Jersey.' Thus, faculty and other employees of the University are bound by the New Jersey Conflict of Interest Statute. [*N.J.S.A.* 52:13D–12 *et seq.*]

■ In view of the clear and broad wording of *N.J.S.A.* 52:13D–16b, the absence of the COAH from *N.J.S.A.* 52:13D–16c, and the clear and expansive wording of the definitions of "State agency" and "State officer or employee" in *N.J.S.A.* 52:13D–13a and –13b there can be little doubt that Rutgers employees are covered by the Conflicts Law. There is thus no room for legislative interpretation of the statute where the language is clear and all embracing. *Febbi v. Division of Employment Security*, 35 *N.J.* 601, 606 (1961); *Todd v. Dabkowski*, 148 *N.J.Super.* 146, 148 (App.Div.1977). Moreover, as we have noted, Rutgers in its own faculty handbook has acknowledged that it is an instrumentality of the State and that its faculty and other employees are bound by the Conflict of Interest statute.

We cannot agree with the contention by the Rutgers faculty that the Commission's Advisory Opinion "subverts the legislative goal of promoting public higher education … [b]y requiring Rutgers teachers and their law students to abandon a clinical case midstream." In the first place the Commission's Advisory Opinion does not *require* anybody to abandon anything. Furthermore, it has no application at all to clinic law students, because they are not employees of Rutgers. Thus, if the League employed a private attorney to represent it before the COAH, the Conflicts Law would not appear to prevent clinic law students from assisting that attorney in such matters, perhaps even under the tutelage of Rutgers' employees. Nor would it preclude Rutgers' clinic students from assisting the Public Advocate, who by statute is specifically charged with the function and duty in the executive branch of challenging the

actions of other executive branch agencies and instrumentalities. *N.J.S.A.* 52:27E–4.

Rutgers employees are State employees. *See Trustees of Rutgers College, supra,* 41 *N.J.Super.* at 297; Attorney General's Formal Opinion No. 10 (1975). Indeed, the term State "employee" is broader than a State "position." *See Fredericks v. Bd. of Health,* 82 *N.J.L.* 200, 201–202 (Sup.Ct.1912). Thus the argument on behalf of the clinic professors is misplaced because it is that very providing of public higher education which makes Rutgers a State agency. As an instrumentality of the State it is entrusted with the essential State function of operating the State university. *Rutgers v. Piluso,* 113 *N.J.Super.* 65, 71 (Law Div.1971), aff'd 60 *N.J.* 142 (1972). Our Supreme Court, in affirming the Law Division in *Piluso,* noted that the nature of the entity that resulted from the 1956 enactment of *N.J.S.A.* 18A:65–1 *et seq.* was "an instrumentality of the State performing an essential governmental function for the benefit of all of the people of the State." 60 *N.J.* at 153. Rutgers is an autonomous public university, yet it is a full-fledged State agency. *Id.* at 157. As a State educational institution Rutgers performs "a governmental rather than a proprietary function." *Miller v. Rutgers,* 619 *F.Supp.* 1386, 1391 (D.N.J.1985). *See also Kovats v. Rutgers, The State University, supra,* 822 *F.*2d at 1310.

Although the League and the *amicus* claim there is no discernable gain to the public in barring Rutgers' employees from representing private parties before State agencies, the Legislature has decided otherwise. Hence, it is the Legislature's province to determine policy and make amendments to the statute. It is conceivable, but hardly likely, that complying with the Conflicts Law may result in some loss to the University's educational program insofar as actual representation by Rutgers' employees before agencies in the Executive Branch of State government is concerned. The Attorney General correctly points out, however, that there is also an offsetting gain—respect for the law:

While the goal of exposing future attorneys to the highest level of challenging litigations is noble, it is not paramount. The need to instill in these same future lawyers a respect for the applicable ethical standards contained in the Conflicts Law is obviously of equal import.

The League asserts, relying on a Report of the Conflict of Interests Committee of the New Jersey State Bar Association to a then *proposed* version of the Conflicts of Interest Law (see 92 *N.J.L.J.* 177 (March 20, 1969)), that the legislative intent was to preclude State official and employees with a personal or pecuniary interest in the outcome of a particular proceeding before a State agency from improperly influencing or affecting the outcome. The League then contends that the evil sought to be avoided by the Legislature does not exist where the Rutgers' employees represent a private client before a State agency in the course of providing an educational experience to law students.

However, the League overlooks the fact that the Legislature did not adopt that aspect of the Committee Report. The Conflicts Law is not limited to instances of personal or pecuniary interest in the outcome of the proceeding. The prior (but now repealed) Conflicts Law, on the other hand did contain such a limitation. See *L.* 1967, *c.* 229, § 3 (*N.J.S.A.* 52:13D-3). As noted, the presently effective legislation adopted in 1971, and as thereafter amended, provides in pertinent part:

> No State officer or employee or member of the Legislature ... shall represent, appear for, or negotiate on behalf of ... any person or party other than the State in connection with *any* cause, proceeding, application or other matter pending before *any* State agency.... [*N.J.S.A.* 52:13D-16b.] (emphasis added)

It is irrelevant that Rutgers' employees in the clinic have no "personal or pecuniary interest" in the outcome of the League's litigation. Nowhere does it appear that it was the Legislature's "express intent," as argued by the League, to preclude only those types of interest conflicts in enacting the Conflicts of Interest Law. *N.J.S.A.* 52:13D-16b is clear, plain and unambiguous. Therefore, it is not open to construction or interpretation, and should be enforced as written. *Sheeran v. Nation-*

*wide Mut. Ins. Co., Inc.,* 80 *N.J.* 548, 556 (1979). The Rutgers employees are representing a party "other than the State" before a State agency. This conduct (whether inside or outside) clearly contravenes *N.J.S.A.* 52:13D–16b.

The present Conflicts Law was designed to prohibit all conduct by State officers and employees that "is in violation of their public trust" *and* all conduct that "creates a justifiable impression among the public that such trust is being violated." *N.J.S.A.* 52:13D–12(a). The Legislature may conclude that it would be inappropriate for officers and employees of one State agency in the executive branch of government (other than the Public Advocate) to be involved adversarily in administrative proceedings involving other State administrative agencies. Indeed, where the Legislature wanted to allow such action, as in the case of the Public Advocate, it knew how to do so. See *N.J.S.A.* 52:27E–29 (authorizing Public Advocate to represent public interest in administrative and legal proceedings deemed in the public's interest); *see also Public Service Elec. & Gas Co. v. Rodriguez,* 195 *N.J.Super.* 252, 256 (App.Div.1984), certif. granted 99 *N.J.* 182 (1984), dismissed as moot (1985).[8]

In *Knight v. Margate,* 86 *N.J.* 374, 391 (1981), our Supreme Court stated that there can be "no equivocation on the point" that the Conflicts law "serves a significant governmental pur-

---

[8]While we have determined that the Rutgers professors, as employees of a State instrumentality, are encompassed by the Conflicts Law, we recognize the somewhat anomalous results of this application. A professor of administrative or constitutional law at a non-State law school may appear, to the extent not proscribed by an employment contract, before a State administrative agency to sharpen practical skills and, in a clinic setting, to use the matter as a teaching tool. Such a professor may commence a court action without fear that transfer of the case to a State agency might deprive the client of continued representation. Thus, in a case where State agency adjudication is involved, a State university professor's ability to obtain continued practical experience and provide the full panoply of clinical experience may be constricted by the Conflicts Law. Although the law by its terms applies to Rutgers professors, it might be that the Legislature was unaware of its impact, and if it had been aware, it is unclear whether State university professors would have been exempted from its application.

pose" and is "applicable to a wide spectrum of public officials and employees." In arguing that "there is *no* discernable gain to the public in barring the Rutgers teachers from COAH proceedings, and a distinct loss to the University's educational program" the League overlooks the fact that the "paramount objective" of the Conflicts law "in general is to 'ensure propriety and preserve public confidence' in government, *N.J.S.A.* 52:13D–12(b)." *Knight v. Margate, supra,* 86 *N.J.* at 391. *See also Greenberg v. Kimmelman,* 99 *N.J.* 552, 561 (1985). This would be so however slight the public perception. *Id.* at 574. What the League ignores is that the Legislature has statutorily decided in *N.J.S.A.* 52:13D–16b that the representation of *any* private party by *any* State employee before *any* State agency not excepted by the law in connection with *any* matter is *per se* conduct "which is in violation of . . . [the] public trust [of public officials and employees] or which creates a justifiable impression among the public that such trust is being violated." *N.J.S.A.* 52:13D–12(a).

Indeed, *Greenberg v. Kimmelman, supra,* 99 *N.J.* at 552, although in the highly regulated casino area, represented an even wider application of the Conflicts Law to someone who was not even a State officer or employee, but rather the wife of a judge who wanted to work as a casino hotel employee. In *Greenberg,* the court found that the Conflicts Law, *N.J.S.A.* 52:13D–17.2b, which restricted from casino employment any "member of the immediate family of any State officer, or employee or person" including judges, was not unconstitutional because "[n]o less restrictive measure could achieve the legislative purpose of placing the impartiality of judges and other State officers beyond suspicion." *Id.* at 574. Nor can we agree that the Conflicts Law should not apply to the Rutgers' professors because what they are doing is within the scope of their State employment. There is no basis, requirement or authorization for a Rutgers' employee to represent in an adversary proceeding a private interest before a State agency.

As Judge Fritz succinctly observed in *MacMillan v. Taxation Div. Director,* 180 *N.J.Super.* 175 (App.Div.1981), aff'd o.b. 89 *N.J.* 216 (1982):

... [W]e remain judges and as such cannot succumb to the humanistic pressures or substitute our concern in place of the legislative design. Indeed, we may not even permit ourselves the luxury of liberal construction—or, as a matter of fact, any construction—if the words of the statute plainly convey the legislative intent.... We must enforce the legislative will as written. *Dacunzo v. Edgye,* 19 *N.J.* 443, 451 (1955). We certainly may not supply a provision no matter how confident we are of what the Legislature would do if it were to reconsider today. *Stamboulos v. McKee,* 134 *N.J.Super.* 567 (App.Div.1975). 'Construing' on 'interpreting' a clear and unambiguous statute is simply not permissible.

More significant than the result in any one case is the wear of the forbidden practice on the doctrine of separation of powers. *Watt v. Franklin,* 21 *N.J.* 274, 277 (1956). To the extent the executive or the judiciary superimposes its judgment on the clearly expressed will of the Legislature, we threaten the doctrine itself and its function as a viable control on our government of laws. [180 *N.J.Super.* at 177]

\* \* \* \* \* \* \* \*

Nor should we lose sight of the fact that answers so clear and necessary in our view that they tempt us to embellish [a statute] must be equally clear to the many fine minds in the Legislature.... [*Id.* at 179]

### III

The argument that the statute was only meant to regulate and control ethical problems that arise in the course of unofficial conduct of State employees outside the context of their responsibilities is contrary to the plain meaning of the statute. To so construe the law would be to authorize after-hours activities by all State employees. The statute is clear and certain on its face, there is no need or room for applying rules of construction to thwart the obvious legislative intent. *State v. McGuire,* 84 *N.J.* 508, 528 (1980). *See Renz v. Penn Central Corp.,* 87 *N.J.* 437, 440 (1981).

The policy issues are more appropriately addressed to the Legislature than to the courts since it is particularly the Legislature's function in this sphere to set the policy for members of

the Legislature and the Executive Branch of government. *See, e.g., Millison v. E.I. du Pont De Nemours & Co.,* 101 *N.J.* 161, 181 (1985); *White v. North Bergen Tp.,* 77 *N.J.* 538, 554–555 (1978); *Burton v. Sills,* 53 *N.J.* 86, 95 (1968), appeal dism'd 394 *U.S.* 812, 89 *S.Ct.* 1486, 22 *L.Ed.*2d 748 (1969); *N.J. Chapter, Am. Institute of Planners v. N.J. State Bd. of Professional Planners,* 48 *N.J.* 581, 601 (1967), appeal dism'd 389 *U.S.* 8, 88 *S.Ct.* 70, 19 *L.Ed.*2d 8 (1967); *Thomas v. Kingsley,* 43 *N.J.* 524, 530 (1965); *Kennedy v. City of Newark,* 29 *N.J.* 178, 184 (1959); *State Bd. of Milk Control v. Newark Milk Co.,* 118 *N.J.Eq.* 504, 519 (E. & A. 1935).

Nor is the absence of any measurable potential for ethical problems controlling where the Legislature has clearly spoken. "[T]he Legislature must always be presumed to favor the public interest as against any private one." *Mullen v. Bd. of Educ. of Jefferson Tp.,* 81 *N.J.Super.* 151, 160 (App.Div.1963).

## IV

The League also contends that the Rutgers' employees "should be permitted to continue to represent ... [it] before the COAH because of the unique circumstances of the *Mt. Laurel* litigation." It claims an inability to obtain substitute *pro bono* counsel, and asserts that important rights may be lost if it is not represented by lawyers. The Commission did not preclude the League from retaining other lawyers who are not State employees, or preclude it from relying on the Public Advocate or assisting the Public Advocate in his representation.

Moreover, the New Jersey American Civil Liberties Union (ACLU) is "co-counsel" for the League in these *Mt. Laurel* matters. There is no indication that these attorneys or some other attorney or group of attorneys cannot temporarily step in to represent it during the "brief interlude" on these matters

before the COAH.[9] Nor do we find any warrant in the statute for writing an exception into the law for the unique circumstances of any litigation. As noted in *Knight v. Margate, supra,* 86 *N.J.* at 391 the Conflicts Law serves a "significant governmental purpose." It is not an unusual or unique situation for an attorney to have to withdraw from representation of a client in mid-case because of various reasons, including possible conflict of interests. Indeed, our Rules of Professional Conduct envision that this might occur. See *R.P.C.* 1:16(a)(1).

## V

We reject as unpersuasive and without merit the arguments of the Public Advocate in his *amicus* brief. Our discussion clearly indicates that we do not agree with the contention that the representation of private interest by the employees of Rutgers before a State agency does not violate the Conflicts Law. Likewise we reject the contention of *amicus* that proceedings before the COAH are proceedings "on behalf of a municipality" and thus exempt from the prohibitions of the Conflict of Interest Law under that exception in *N.J.S.A.* 52:13D–16c. All but the last exemption in *N.J.S.A.* 52:13D–16c are based on the nature of the proceeding involved. The last exemption (the one on which *amicus* relies) is based on the identity of the party represented. That is, a State employee, for example, can appear before a State agency "on behalf of a county, municipality or school district" in "any proceeding," except where the State is an "adverse party in the proceeding," and provided the State employee is "not holding any office or employment in the State agency in which any such proceeding is pending." *N.J.S.A.* 52:13D–16c.

Here, of course, the Rutgers employees are *not* appearing before COAH "on behalf of a county, municipality or school

---

[9]This may be even more the case in light of the decision in *Urban League of Greater New Brunswick v. Township Committee of the Township of Cranbury,* 222 *N.J.Super.* 131 (App.Div.1987). See *supra,* n. 4.

district, or any authority, agency or commission of any thereof." Thus, the exemption is not applicable.

Assuming *arguendo* that the *amicus'* interpretation of *N.J.S. A.* 52:13D–16c might be correct, this exemption is still not applicable. The primary goal of the administrative process before the COAH is to "achieve a realistic opportunity for the construction of the municipalities' fair share of low and moderate income housing." *Hills Dev. Co. v. Bernards Tp. in Somerset Cty., supra,* 103 *N.J.* at 34–35. The *amicus'* argument makes it seem that this process exists solely for the benefit, advantage and interest of municipalities. Rather, it exists to "enforce the constitutional rights of New Jersey's lower income citizens." *Id.* at 65. This process is more "on behalf of" lower income citizens than it is "on behalf of" municipalities.[10]

The brief submitted by *amicus* essentially recognizes the weakness of its own contention when it states that proceedings before the COAH, by their very nature involve the exclusive power of municipalities to initiate them, and then continues by stating that "such proceedings are very nearly by definition *'on behalf of'* the petitioner municipalities." Obviously, the statutory exception in subsection 16c refers to an exception for representation by an attorney in "any proceeding on behalf of a county, municipality or school district, or any authority, agency or commission of any thereof except where the State is an adverse party in the proceeding and providing he is not holding any office or employment in the State agency in which any such proceeding is pending." *N.J.S.A.* 52:13D–16c. Hence, the exception only applies to representation of such governmental unit, except where the State is an adverse party, and provided further that the employee is not holding an office or employ-

---

[10]The Legislature may wish to consider whether there should be an exemption of the professors generally from the application of the Conflicts Law. Our role is to address the legal issues before us, the Legislature may address the policy issues involved if it chooses to do so.

ment in the particular State agency in which the proceeding is pending.

We conclude that the Commission correctly determined that the Rutgers' employees in the clinic are subject to the Conflicts Law, and that they cannot represent the League before COAH without violating that law.

We find no basis to disturb the Commission's Advisory Opinion, and accordingly its determination is affirmed.